Kevin Mahoney (SBN: 235367)
kmahoney@mahoney-law.net
John A. Young (SBN: 299809)
jyoung@mahoney-law.net
**MAHONEY LAW GROUP, APC**
249 E. Ocean Boulevard, Suite 814
Long Beach, CA 90802
Telephone No.: (562) 590-5550
Facsimile No.: (562) 590-8400

Attorneys for Plaintiff KYANA RAMPLEY, as an individual and on behalf of all similarly situated employees

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYANA RAMPLEY, individually and on behalf of all employees similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>BEAR VALLEY COMMUNITY HEALTHCARE DISTRICT, and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.: 5:21-cv-01270-SPG-SHKx<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Assigned for all purposes to:<br>Hon. Sherilyn Peace Garnett<br><br>Date:          September 27, 2023<br>Time:          1:30 p.m.<br>Courtroom:  5C<br><br>Complaint Filed:  July 29, 2021 |

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 27, 2023, at 1:30 p.m., in Courtroom C of the United States District Court for the Central District of California located at 350 W. 1st Street, Los Angeles, California, Plaintiff KYANA RAMPLEY ("Plaintiff"), individually, and on behalf of those similarly situated will, and hereby does move this Court, pursuant to the Federal Rules of Civil Procedure, Rule 23(e), for an order granting final approval of the class action settlement between Plaintiff and Defendant BEAR VALLEY COMMUNITY HEALTHCARE DISTRICT (referred to herein as "Defendant") (Plaintiff and Defendant are referred to collectively as the "Parties"), memorialized in the Parties' Class/Collective Action and PAGA Settlement Agreement and Class Notice ("Settlement Agreement"), and preliminarily approved by this Court on May 22, 2023. (Dkt. No. 39.)

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Motion for Final Approval of Class Action Settlement; (3) the Declarations of Kevin Mahoney and John A. Young in Support of the Motion; (4) the Declaration of Taylor Mitzner of Phoenix Settlement Administrators; (5) the Parties' Settlement Agreement; (6) the Notice of Class Action Settlement; (7) the [Proposed] Order Granting Final Approval of Class Action Settlement; (8) the records, pleadings, and papers filed in this Action; and (9) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Dated: July 26, 2023                    **MAHONEY LAW GROUP, APC**

By:    */s/Kevin Mahoney*
Kevin Mahoney, Esq.
John A. Young
Attorneys for Plaintiff Kyana Rampley

PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ....................................2

  A.  The Parties .................................................................................................2

  B.  The Class and Representative Action....................................................3

  C.  Mediation and Settlement .......................................................................3

  D.  Significant Discovery and Investigation Informally Conducted by the Parties 3

  E.  Preliminary Approval of the Settlement...............................................4

III.  SUMMARY OF SETTLEMENT TERMS ....................................................5

  A.  Monetary Terms .......................................................................................5

  B.  The Settlement Class and Class Period ................................................6

  C.  The Settlement Distribution Formula....................................................7

  D.  The Class Release .....................................................................................7

IV.  THE NOTICE PROCESS ...............................................................................9

V.  SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE ...................................................................................................9

  A.  Legal Standards .......................................................................................9

  B.  Final Confirmation of Class Certification is Appropriate.............................13

  C.  Final Settlement Approval is Appropriate as the Settlement Agreement is Fair, Reasonable, and Adequate .........................................................................13

    1.  The Settlement is the Product of Arms' Length Negotiations...................13

    2.  The Costs and Risks of Further Litigation Favor Approval of the Settlement ...............................................................................................15

    3.  The Amount of the Settlement Favors Approval .........................................17

    4.  The Settlement Provides for Equal Treatment of Class Members..............18

    5.  The Absence of Any Class Member Objection to the Settlement Agreement Supports Final Approval.........................................................................19

    6.  Additional Rule 23(e) Factors ..................................................................19

VI.  CONCLUSION ...............................................................................................20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Aftermarket Automotive Lighting Products Antitrust Litigation*
10, 2014, No. 09 MDL 2007-GW(PJWX)),
   2014 WL 12591624 ..................................................................... 28

*Altamirano v. Shaw Industries, Inc.*,
   (N.D. Cal., July 24, 2015, No. 13-CV-00939-HSG) 2015 WL 4512372 ............ 27

*Atlas v. Accredited Home Lenders Holding Co.*
4, 2009, No. 07-CV-00488-H (CAB)),
   2009 WL 3698393 ........................................................................ 28

*Balderas v. Massage Envy Franchising, LLC*,
   (N.D. Cal., July 21, 2014, No. 12-CV-06327 NC) 2014 WL 3610945 .............. 26

*Behrens v. Wometco Enterprises, Inc.*,
   (S.D. Fla. 1988) 118 F.R.D. 534 ....................................................... 26

*Boyd v. Bechtel Corp.*,
   (N.D. Cal. 1979) 485 F.Supp. 610 ..................................................... 29

*Chun-Hoon v. McKee Foods Corp.*,
   (N.D. Cal. 2010) 716 F.Supp.2d 848 ................................................ 28

*Churchill Village, L.L.C. v. General Electric*,
   (9th Cir. 2004) 361 F.3d 566 ....................................................... 8, 19

*City of Detroit v. Grinnell Corp.*,
   (S.D.N.Y. 1972) 356 F.Supp. 1380 ................................................... 26

*City of Detroit*,
   495 F.2d ................................................................................. 27

*Ellis v. Naval Air Rework Facility*,
   (N.D. Cal. 1980) 87 F.R.D. 15 ......................................................... 29

*Greko v. Diesel U.S.A., Inc.*,
  (N.D. Cal., Apr. 26, 2013, No. 10-CV-02576 NC) 2013 WL 1789602 .............. 24

*Hanlon v. Chrysler Corp.*,
  (9th Cir. 1998) 150 F.3d 1011........................................................ 9, 19, 20, 21, 30

*Harris v. Vector Marketing Corp.*,
  (N.D. Cal., Apr. 29, 2011, No. C-08-5198 EMC) 2011 WL 1627973 ............... 22

*In re Bluetooth Headset Products Liability Litigation*,
  (9th Cir. 2011) 654 F.3d 935........................................................ 19, 22

*In re Pacific Enterprises Securities Litigation*,
  (9th Cir. 1995) 47 F.3d 373........................................................ 29

*In re Zynga Inc. Securities Litigation*,
  (N.D. Cal., Oct. 27, 2015, No. 12-CV-04007-JSC) 2015 WL 6471171 ............. 22

*International Union of Operating Engineers-Employers Const. Industry Pension, Welfare and Training Trust Funds v. Karr*,
  (9th Cir. 1993) 994 F.2d 1426 ........................................................ 15

*Lazarin v. Pro Unlimited, Inc.*,
  (N.D. Cal., July 11, 2013, No. C11-03609 HRL) 2013 WL 3541217................ 16

*Linney v. Cellular Alaska Partnership*,
  (9th Cir. 1998) 151 F.3d 1234........................................................ 26

*Ma v. Covidien Holding, Inc.*,
  (C.D. Cal., Jan. 31, 2014, No. SACV 12-02161-DOC) 2014 WL 360196 ........ 26

*Mandujano v. Basic Vegetable Products, Inc.*,
  (9th Cir. 1976) 541 F.2d 832........................................................ 28

*Mora v. Harley-Davidson Credit Corp.*,
  (E.D. Cal., Jan. 3, 2014, No. 1:08-CV-01453-BAM) 2014 WL 29743.............. 24

*National Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
  (C.D. Cal. 2004) 221 F.R.D. 523 ................................................ 18, 28

*Officers for Justice v. Civil Service Com'n of City and County of San Francisco*,
  (9th Cir. 1982) 688 F.2d 615............................................................ 19, 20, 25, 26

*Rodriguez v. West Publishing Corp.*,
  (9th Cir. 2009) 563 F.3d 948............................................................ 22, 29

*Staton v. Boeing Co.*,
  (9th Cir. 2003) 327 F.3d 938............................................................ 18

*Thieriot v. Celtic Ins. Co.*,
  2011 WL 1522385 (N.D. Cal. April 21, 2011).................................... 24

*Vasquez v. Packaging Corporation of America*,
  (C.D. Cal., Aug. 17, 2020, No. CV191935PSGPLAX) 2020 WL 6785650 ....... 16

*Velazquez v. International Marine and Industrial Applicators, LLC*
9, 2018, No. 16CV494-MMA (NLS)),
  2018 WL 828199............................................................................ 23

Statutes

28 U.S.C. section 1442(a)(1) .............................................................. 9

28 U.S.C. sections 1331 and 1441 (a).................................................. 9

28 U.S.C.A.(a) and 23(b)(3) .............................................................. 8

29 U.S.C.A. sections 206 to 207 ........................................................ 9

California Business & Professions Code Sections 17200 ...................... 15

Rules

Federal Rule of Civil Procedure 23, subdivision (a) ............................ 11

Federal Rule of Civil Procedure 23, subdivision (b)(3) ........................ 11

Federal Rules of Civil Procedure, rule 23............................... 8, 18, 20, 21

Federal Rules of Civil Procedure, Rule 23(e)................................ Passim

Rule 23(a) and Rule 23(b)(3) ............................................................ 21

Rule 23(e)(2) ............................................................................ 19, 20

Rule 23(e)(3) ................................................................................. 19, 20

Rule 23, subdivision (e) of the Federal Rules of Civil Procedure ...................... 7, 30

TABLE OF CONTENTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff KYANA RAMPLEY ("Plaintiff") submits this memorandum in support of his unopposed Motion for Final Approval of Class Action Settlement ("Motion"). The proposed settlement reached by Plaintiff and Defendant BEAR VALLEY COMMUNITY HEALTHCARE DISTRICT (referred to herein as "Defendant") (Plaintiff and Defendant are referred to collectively as the "Parties"), as memorialized in the Parties' Class/Collective Action and PAGA Settlement Agreement and Class Notice ("Settlement Agreement"), is fair, adequate, and reasonable, and thus warrant final approval, for the reasons provided herein.

## I.    INTRODUCTION

The Parties[1] hereto have reached a settlement in this matter, which is subject to the final approval of this Court. Plaintiff requests that the Court grant final approval of the Parties' Settlement Agreement, pursuant to Rule 23, subdivision (e) of the Federal Rules of Civil Procedure. The non-reversionary settlement amount of two hundred forty thousand dollars ($240,000.00) is "fair, reasonable, and adequate" within the meaning of Rule 23(e). The Class includes four hundred twenty-one (421) Class Members, comprised of all current and former non-exempt employees employed by Defendant within the state of California at any time from July 29, 2023 through May 22, 2023 (the "Class Period"). Class Members stand to recover substantial and immediate monetary benefits under the settlement with an average estimated Gross Recovery of two hundred eighty-six dollars and seventy-six cents ($286.76) per Settlement Class Member. (Declaration of Taylor Mitzner ("Mitzner Dec.") ¶ 11.)

The settlement is in line with the strength of Class Members' claims given the risk, expense, complexity, and likely duration of further litigation, including the risks of establishing liability, proving damages at trial and on appeal, and the

---

[1] All capitalized terms appearing in this Memorandum that are not defined herein have the same meanings assigned to them as provided in the Parties' Settlement Agreement. (Young Dec., Ex. A)

risks of securing and maintaining class action status throughout the trial and on appeal. (*See Churchill Village, L.L.C. v. General Electric* (9th Cir. 2004) 361 F.3d 566, 575–76 (citing *Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1026). It is uncertain whether Plaintiff would have ultimately been able to certify and maintain the case as a class action, and to have prevailed on liability for the Class through summary judgment, at trial, and on appeal. Weighing the risks, time, and expense of continued litigation against the substantial benefits afforded now by the proposed settlement, Class Counsel represents that the proposed settlement is in the best interest of the Class.

In connection with requesting final settlement approval, Plaintiff also requests that the Court: (1) confirm as final the certification of the Class under Federal Rules of Civil Procedure, rule 23, 28 U.S.C.A.(a) and 23(b)(3); (2) confirm as final the appointment of Plaintiff as the class representative of the Class; and (3) enter the proposed final approval order and enter judgment. Plaintiff also requests the Court award Class Counsel's requested attorney's fees and costs in a separate motion filed concurrently herewith. Finally, while the settlement is not contingent upon any service payment, Plaintiff requests the Court award a service payment to compensate Plaintiff for her service to and risks taken on behalf of the Class, as provided on a separate motion filed concurrently herewith.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Parties

Defendant BEAR VALLEY COMMUNITY HEALTHCARE DISTRICT ("Defendant"), which is a California nonprofit corporation conducting business in the State of California and provides medical services in California.

Plaintiff and the Class Members were all current and or former non-exempt employees employed by Defendant within the state of California at any time from July 29, 2023 through May 22, 2023.

## B.      The Class, Collective, and Representative Action

On July 29, 2021, Plaintiff filed a collective action complaint alleging a single cause of action for failure to pay overtime compensation in violation of the Fair Labor Standards Act. On January 20, 2023, Plaintiff filed an amended complaint adding class and representative claims for failure to pay minimum wage and overtime wages in violation of the Labor Code and in violation of the PAGA. Defendant denies all of Plaintiff's allegations in the complaint and the theories of liability upon which this case was asserted. Defendants asserted affirmative defenses to each of the causes of action asserted therein. (Declaration of John A. Young ("Young Dec.") ¶ 4.)

## C.      Mediation and Settlement

On December 2, 2022, the Parties engaged in private mediation with mediator Steve Serratore, a highly-experienced mediator in the type of wage and hour allegations brought in this matter by Plaintiff. The Parties engaged in a good faith arms-length settlement negotiations through Mr. Serratore and ultimately the Parties reached an agreement and memorialized in the Class/Collective Action and PAGA Settlement Agreement and Class Notice ("Settlement Agreement" or "Settlement"). At all times, the negotiations leading to the Settlement Agreement have been adversarial, non-collusive, and at arm's length. (Young Dec. ¶ 11.)

## D.      Significant Discovery and Investigation Conducted by the Parties

Parties engaged in formal and informal discovery, as well as fostering a cooperative dynamic ahead of the substantive negotiations. Over the course of the litigation, I and others from my office conducted extensive investigation into the claims asserted in this case. That investigation included serving Request for Admissions, Request for Production of Documents, and two sets of Interrogatories. Likewise, Defendant served Request for Production of

Documents and Interrogatories on Plaintiff.  Further, Defendant deposed Plaintiff on March 9, 2022. In addition, prior to mediation, Defendant provided to Plaintiff a random 33.33% sampling of Class Members' time and pay records, Defendant's written policies and handbooks, and identified the number of employees comprising the putative class and/or aggrieved employees, as well as the relevant total workweeks and pay periods, to allow Plaintiff's counsel to assess liability and value of each cause of action. Through formal and informal discovery, Plaintiff secured information and documentation concerning the claims set forth in the litigation, such as Defendant's policies and procedures regarding the payment of wages, time keeping, incentive payments, as well as information regarding the number of putative class members and the mix of current versus former employees, Defendant's written policies and handbook, the wage rates in effect, and length of employment for the average putative class member. (Young Dec. ¶ 5.)

Using the above information and records, Plaintiff and her counsel were able to reasonably assess liability on the part of Defendant and the resulting value of damages, paving the way for the proposed settlement terms. (Young Dec. ¶ 6.) Accordingly, Plaintiff and her counsel determined that the agreed-upon initial sum of two hundred forty thousand dollars ($240,000.00) was a reasonable and appropriate gross settlement value for this instant action.  Accordingly, Class Counsel maintains that this settlement is fair, adequate, and reasonable (Young Dec. ¶¶ 14-15.)

### E.    Preliminary Approval of the Settlement

On May 22, 2023, the Court granted the unopposed Motion for Preliminary Approval of the Class Action Settlement. (Dkt. No. 39.) Therein, the Court determined that the Settlement Agreement is "fair, just, and reasonable and, therefore, meet the requirements for preliminary approval . . ." (Dkt. No. 39.) The Court further found that, 'for settlement purposes only, the requirements of

Federal Rule of Civil Procedure 23, subdivision (a) and Federal Rule of Civil Procedure 23, subdivision (b)(3) are satisfied. (Dkt. No. 39.) The Court conditionally certified, for settlement purposes only, a "Class" consisting of the following:

> [A]ll current and former non-exempt, exempt employees employed by Defendant within the State of California at any time during the Class Period. The Class Period is from July 29, 2018 to the earlier of (1) the date of preliminary approval of the Settlement or (2) the pay period ending date when Class Members collectively worked a number of Workweeks closest to 43,000 Workweeks. (the "Class Period"). (Dkt. No. 61.)

## III.   SUMMARY OF SETTLEMENT TERMS

### A.   Monetary Terms

In consideration for the releases of all claims at issue, Defendant agrees to pay two hundred forty thousand dollars ($240,000.00) (the "Gross Settlement Amount"), excluding Defendant's side of payroll taxes (which Defendant will pay separately), as a full and complete settlement of all claims arising from the action by the Class. The Gross Settlement Amount shall be allocated as follows:

(1)   Settlement administration costs to Phoenix Class Action Administrators shall not to exceed ten thousand dollars ($10,000.00) (Young Dec., ¶ 12, Ex. A, section 3.2.3.);

(2)   A requested one-third or thirty-three and one-third percent (33.33%) of the Gross Settlement Amount or eighty thousand dollars ($80,000.00), and Class Counsel originally estimated the litigation costs to be fifteen thousand dollars ($15,000.00). Attorneys' actual costs in the amount of eleven thousand seven hundred seventy-five dollars and eighty-seven cents ($11,775.87) are requested by Class Counsel to be paid from the GSA. The remaining amount of three thousand two hundred twenty-four dollars and thirteen cents ($3,224.13)

will become part of the Net Settlement Amount for distribution to Participating Class Members;

(3)   A requested Enhancement Payment for Plaintiff as Class Representative in the amount of seven thousand five hundred dollars ($7,500.00);

(4)   Ten thousand dollars ($10,000.00) from the Gross Settlement Amount allocated to the settlement of claims brought under the PAGA, of which a payment of seventy five percent (75%) or seven thousand five hundred dollars ($7,500) will be made to the LWDA for enforcement of labor laws and education of employers. The remaining twenty five percent (25%) or two thousand five hundred dollars ($2,500) will be distributed to Aggrieved Employees in accordance with the terms of the Settlement.

The Parties further agreed that the Gross Settlement Amount is non-reversionary. As such, one hundred percent (100%) the Net Settlement Amount will be paid to Class Members without the need to submit a claim.

### B.   The Settlement Class and Class Period

All current and former non-exempt, exempt employees employed by Defendant within the State of California at any time during the Class Period.  The Class Period is from July 29, 2018, to the earlier of (1) the date of preliminary approval of the Settlement or (2) the pay period ending date when Class Members collectively worked a number of Workweeks closest to 43,000 Workweeks.  (the "Class Period"). (Dkt. No. 39.) As of the date of preliminary approval, the number of workweeks were 42,882. Accordingly, the "Class Period" is from July 29, 2018 to May 22, 2023, the date the Court granted preliminary approval of the Settlement.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

### C.    The Settlement Distribution Formula

The Net Settlement Amount shall be apportioned among Participating Class Members based on each of their respective number of Workweeks worked during the Class Period. The Settlement Administrator will calculate the Workweeks for each Participating Class Member. The Settlement Administrator will calculate a Final Workweek Value from the Net Settlement Amount for each Settlement Class Member by dividing the respective Workweeks by the total Workweeks worked by Participating Class Members. (Young Dec., Ex. A, section 3.2.4.)

Based on the estimated Net Settlement Amount of one hundred twenty thousand seven hundred twenty-four dollars and thirteen cents ($120,724.13) the average payment to Participating Class Members will be two hundred eighty-six dollars and seventy-six cents ($286.76). (Mitzner Dec. ¶ 11) This recovery on behalf of Class Members is well in excess of amounts that have been approved on the low end of the range of wage and hour settlements in California state and federal courts. (*See, e.g., Sorenson v. PetSmart, Inc.,* No. 2:06-CV-02674-JAM-DAD (E.D. Cal.) (average net recovery of approximately $60); *Lim v. Victoria's Secret Stores, Inc.*, No. 04CC00213 (Orange County Super. Ct.) (average net recovery of approximately $35); *Gomez v. Amadeus Salon, Inc.*, No. BC392297 (L.A. Super. Ct.) (average net recovery of approximately $20); *Delgado v. New Albertson's, Inc.*, No. SACV08-806 DOC-RBNx (CD. Cal.) (average net recovery of approximately $45.)

### D.    The Class Release

As of the full funding of the Gross Settlement Amount, All Participating Class Members, who endorse/cash their settlement check pursuant to paragraph 7.5, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, release Released Parties from all claims that were alleged, or reasonably could have been alleged, that arose during the Class Period, based on the facts and legal

assertions stated in the Operative Complaint and ascertained in the course of the Action, including any and all claims involving any alleged failure to pay minimum wages and overtime wages and for liquidated damages under the FLSA, 29 U.S.C §§ 201, et seq., and 29 C.F.R. §§ 778.101, et seq. (the "Release FLSA Class Claims"). In addition, all Participating Class Members, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, release Released Parties from all claims that were alleged, or reasonably could have been alleged, that arose during the Labor Code Class Period, based on the facts and legal assertions stated in the Operative Complaint and ascertained in the course of the Action, including any and all claims involving any alleged failure to pay overtime wages pursuant to California Labor Code sections 510 and 1194, and applicable IWC Wage Orders; failure to pay minimum wages pursuant to California Labor Code sections 1194, 1194.2, 1197, and 1197.1 and applicable IWC Wage Orders; failure to pay all wages owed at termination pursuant to California Labor Code sections 201-203; failure to pay all wages in a timely manner during employment pursuant to California Labor Code section 204 and applicable IWC Wage Orders; to furnish accurate itemized wage statements pursuant to California Labor Code section 226(a) and applicable IWC Wage Orders; and failure to maintain adequate payroll records pursuant to California Labor Code sections 1174(d) and applicable IWC Wage Orders (the "Released Labor Code Class Claims") (Young Dec., Ex. A, section 5.2.)

The releases provided in the Settlement Agreement is directly related to Plaintiff's claims and are therefore appropriate. *See International Union of Operating Engineers-Employers Canst. International Union of Operating Engineers-Employers Const. Industry Pension, Welfare and Training Trust Funds v. Karr* (9th Cir. 1993) 994 F.2d 1426, 1430 ("res judicata bars not only all claims that were actually litigated, but also all claims that 'could have been asserted' in the prior action").

## IV.    THE NOTICE PROCESS

### A.    Notification to the Class

On May 22, 2023, the Court appointed Phoenix Class Action Administrators ("Phoenix") as the Settlement Administrator pursuant to the terms of the Settlement Agreement and carry out the Settlement according to the terms of the Settlement Agreement. (Dkt. No. 39.) June 28, 2023, Phoenix mailed the Notice Packet via U.S. first class mail to all four hundred twenty-one (412) Class Members on the Class List. (Mitzner Dec., ¶ 5, Ex. A.)

As of July 18, 2023, zero (0) Notice Packets have been returned to Phoenix. (Mitzner Dec., ¶ 6.) A supplemental declaration from the Settlement Administrator's representative will also be filed fourteen (14) days prior to the Final approval Hearing containing updated information regarding the above Notice Packets and the number, if any, of timely opt-outs and or objections received by the Settlement Administrator.

### B.    Request for Exclusion, Objections, and Disputes

The deadline for Class Members to submit an Opt-Outs, Notice of Objections, and or Workweek disputes is August 28, 2023. (Mitzner Dec., ¶¶ 7-9). As of July 18, 2023, Phoenix has not received any Opt-Outs, Notice of Objections, and or Workweek disputes. (Mitzner Dec., ¶¶ 7-9).

### C.    Total Participating Class Members

Plaintiff's Counsel will file a declaration from the Settlement Administrator regarding the administration of the Class Notice, number of opt-outs, and objections, if any, fourteen (14) calendar days prior to the Final Approval Hearing.

## V.    SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    Legal Standards

Rule 23(e) of the Federal Rules of Civil Procedure provides that "claims,

issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e). The requirements of Rule 23(e) set forth the procedures for approval of class action settlements. First, the court must direct notice in a reasonable manner to all Class Members who would be bound by the settlement. Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e)(1). Class Members should be given the opportunity to opt-out of the settlement and to object to the settlement. Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e)(4)-(5). A court may only approve a binding settlement after a hearing, and on finding that the settlement is fair, reasonable, and adequate. Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e)(2).

A court must engage in a two-step process to approve a proposed class action settlement. First, the court must determine whether the proposed settlement deserves preliminary approval. (*National Rural Telecommunications Cooperative v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 525.) This step has already been completed here, as the Court preliminarily approved the settlement on April 6, 2021. (*See* Order Granting Preliminary Approval of Class Action Settlement, ECF Dkt. No. 61.)

Second, after notice is given to Class Members, a court must determine whether final approval is warranted. (*National Rural Telecommunications Cooperative*, *supra*, 221 F.R.D. at p. 525.) To grant final approval, the court must find that the proposed settlement is fair, adequate, and reasonable. (*See Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 959 (citing *Hanlon*, *supra*, 150 F.3d at p. 1026).) In making this determination, the court may consider any or all of the following factors:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental

participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Village, L.L.C.*, *supra*, 361 F.3d at p. 575; *Officers for Justice v. Civil Service Com'n of City and County of San Francisco* (9th Cir. 1982) 688 F.2d 615, 625; *Hanlon*, *supra*, 150 F.3d at p. 1026. This list is not exhaustive, and "[t]he relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, *supra*, 688 F.2d at p. 625. Where a settlement is reached prior to formal class certification, courts also look for signs of collusion or other conflicts of interest. (*See In re Bluetooth Headset Products Liability Litigation* (9th Cir. 2011) 654 F.3d 935, 946–47.)

Under recent amendments to the Federal Rules of Civil Procedure, district courts must also consider a list of factors delineated in Rule 23(e)(2), which bear similarities to the Ninth Circuit's longstanding factors and considerations:

> (2) Approval of the Proposal. If the proposal would bind Class Members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats Class Members equitably relative to each other.

The Advisory Committee recognizes that federal "[c]ourts have generated lists of factors" to decide the fairness, reasonableness, and adequacy of a settlement, and that "each circuit has developed its own vocabulary for expressing these concerns." Fed. Rules Civ. Proc., rule 23, 28 U.S.C.A.(e)(2) Advisory Committee's Notes to 2018 Amendments. In recognizing these, the Advisory Committee explained that it did not intend to "displace any factor [used by federal courts], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Id. As such, to the extent possible, the Court should apply the factors listed in Rule 23(e)(2) through the lens of the Ninth Circuit's factors and existing relevant precedent. The Court should also take heed of the Advisory Committee's warning not to let "[t]he sheer number of factors ... distract both the court and the parties from the central concerns that bear on review under Rule 23(e)(2)." (Id.)

Despite the importance of fairness, the Court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class actions. (*See, e.g., Officers for Justice*, *supra*, 688 F.2d at p. 625 ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation").) While balancing all of these interests, the Court's inquiry is ultimately limited "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." (*Ibid.*) "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." (*Hanlon*, *supra*, 150 F.3d at p. 1026.) "Settlement is the offspring of compromise; the question ... is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." (*Id.* at p. 1027.)

**B.    Final Confirmation of Class Certification is Appropriate**

The Court preliminarily certified the Class for settlement purposes under Rule 23 of the Federal Rules of Civil Procedure, appointed Plaintiff as the representative for the Class, and appointed Plaintiff's attorneys as Class Counsel. (Dkt. No. 39.) The Court found, for purposes of settlement, that the Class meets all of the requirements under Rule 23(a) and Rule 23(b)(3) to maintain this Action as a class action. The deadline for opting out of, or objecting to, the Settlement Agreement is August 28, 2023.

For these reasons, and for the reasons set forth in the Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 35), the Court should confirm the certification of this action as a settlement class action and the appointment of Plaintiff as the Class Representative.

**C.    Final Settlement Approval is Appropriate as the Settlement Agreement is Fair, Reasonable, and Adequate**

**1.    The Settlement is the Product of Arms' Length Negotiations**

As discussed more extensively in the Parties' Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 35), as well as in Plaintiff's Motion for Attorney's Fees ("Fees Motion") concurrently filed herewith, (1) Class Counsel are highly experienced in class action wage and hour litigation; (2) Plaintiff and Defendant conducted significant discovery and investigation that allowed Class Counsel to act intelligently in negotiating and recommending the settlement; and, (3) the Parties arrived at the settlement through arms-length bargaining involving competent and experienced counsel, and only after a full day of mediation with an experienced mediator. (*See Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution, and have never prescribed a particular formula by which that outcome must be

tested.") (citations omitted); *In re Zynga Inc. Securities Litigation* (N.D. Cal., Oct. 27, 2015, No. 12-CV-04007-JSC) 2015 WL 6471171, at *9 (holding that the parties' use of mediator and the fact that significant discovery had been conducted "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement"); *Harris v. Vector Marketing Corp.* (N.D. Cal., Apr. 29, 2011, No. C-08-5198 EMC) 2011 WL 1627973, at *8 (noting that the parties' use of a mediator "suggests that the parties reached the settlement in a procedurally sound manner and that it was not the result of collusion or bad faith by the parties or counsel.")

Finally, none of the "subtle signs of collusion" that the Ninth Circuit has warned of are present here. (*See e.g. In re Bluetooth Headset Products Liability Litigation*, *supra*, 654 F.3d at p. 947.) Class Members will be receiving monetary distribution commensurate with their pro rata share of the Gross Settlement Amount, and based upon the number of Workweeks they have worked for Defendant. (Young Dec., Ex. A, section 3.2.4.) Further, Class Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed one-third of the Gross Settlement Amount to compensate them for the services they have rendered on behalf of the Settlement Class Members. (*See generally*, Motion for Attorneys' Fees and Costs.) The award of attorneys' fees is separate from the approval of the Settlement, and neither Plaintiff nor Class Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. Moreover, there is no indication of a "clear sailing" arrangement, or an arrangement for unawarded fees to revert to Defendant rather than the Class Members. (Young Dec., Ex. A, section 3.1.) The Settlement is not a claims-made settlement. It is an all-in, non-reversionary settlement. Upon the occurrence of the Effective Date, no Defendant, Releasee, or any other person or entity who, or which, paid any portion of the Settlement shall have any right to the return of the Gross

Settlement Amount or any portion thereof for any reason whatsoever. As such, this factor weighs in favor of final approval.

### 2. The Costs and Risks of Further Litigation Favor Approval of the Settlement

The Court must "balance the continuing risks of litigation (including the strengths and weaknesses of the Plaintiff's case), with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery." (*Velazquez v. International Marine and Industrial Applicators, LLC* (S.D. Cal., Feb. 9, 2018, No. 16CV494-MMA (NLS)) 2018 WL 828199, at *4.)

Plaintiff is convinced of the strengths of his claims. However, Defendant is equally adamant about the strength of its defenses. Plaintiff's claims and Defendant's defenses give rise to a number of critical, disputed factual and legal issues that go to the core of Plaintiff's claims and theories of liability and, by extension, to Plaintiff's entitlement to recover damages and penalties, and/or the proper measure of damages.

As is set forth in greater detail in the Motion for Preliminary Approval, supplemental briefing and the Declarations filed in support thereof (Dkt. Nos. 35), while this is a strong case for class certification and for maintaining class status through trial, there is a risk that Plaintiff and the Class would not prevail on the merits should this case proceed to trial. At the very least, litigating these issues would require additional costly and complicated discovery, summary judgment practice, and, in all likelihood, trial. Whether Plaintiff would prevail remains uncertain, and appeals would almost certainly follow any ruling by this Court.

By contrast, the Settlement provides excellent recoveries to class members now without that uncertainty and delay. In Class Counsel's extensive experience litigating similar cases, Class Counsel understands and appreciates the risks and uncertainties facing the claims of Plaintiff and the Class, which weigh in favor of

settlement approval. Whatever the strength of the claims, Plaintiff nonetheless face numerous obstacles to recovery, including likely challenges to the use of representative testimony and expert witnesses to establish class-wide liability and aggregate damages, challenges to Plaintiff's methodology for calculating damages and penalties, and having to defeat Defendant's defenses. It is especially true here where Defendant denies liability, and when a party continues to deny liability, there is an inherent risk in continuing litigation. In *Thieriot v. Celtic Ins. Co.,* 2011 WL 1522385 at *5 (N.D. Cal. April 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation. *See also Mora v. Harley-Davidson Credit Corp.* (E.D. Cal., Jan. 3, 2014, No. 1:08-CV-01453-BAM) 2014 WL 29743, at *4 (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.* (N.D. Cal., Apr. 26, 2013, No. 10-CV-02576 NC) 2013 WL 1789602, at *4 ("[E]ven with a strong case, litigation entails expense.")

Further, despite the suitability of this matter for class treatment, the litigation regarding class certification would also have been expensive and time-consuming. Assuming the Court certified a class action for trial, Defendant could have appealed from a class certification order, which might have delayed the proceedings considerably and been very expensive. Additionally, if this case had proceeded to trial, the time and expenses associated with trial preparation would have been considerable. A class action trial in this case would be manageable, but it would also be complex, expensive, and extremely time-consuming. Even if Plaintiff obtained a favorable verdict and judgment on her claims, Plaintiff and the Class would face additional expenses and delay if, as is likely, Defendant were to appeal.  Taken together, these considerations support approval of the settlement.

### 3.    The Amount of the Settlement Favors Approval

The Court must weigh the risk to Plaintiff against the value of the Settlement. (*Officers for Justice*, *supra*, 688 F.2d at p. 625.) The Settlement provides for a two hundred forty-thousand-dollar ($240,000.00) Gross Settlement Amount, and no less than one hundred twenty thousand seven hundred twenty-four dollars and thirteen cents ($120,724.13) Net Settlement Amount once the Administration costs, litigation costs requested, attorneys' fees requested, service award requested, and LWDA's portion of the PAGA allocation have been deducted. Class Counsel request attorney's fees of no more than one-third of the Gross Settlement Amount, or eighty thousand dollars ($80,000.00). Class Counsel also seek reimbursement of eleven thousand seven hundred seventy-five dollars and eighty-seven cents ($11,775.87) in litigation expenses incurred by Class Counsel.

As stated in the Declaration of John A. Young in support of Plaintiff's preliminary approval (Dkt. No. 35, Young Dec. ¶¶ 20-21), it is estimated that the reasonable value for all claims is approximately seven hundred eight thousand four hundred eighty dollars ($708,480.00). The Gross Settlement Amount of two hundred forty thousand ($240,000.00) represents approximately forty 34% of the reasonable value of the case. (Dkt. 35 Young Dec., ¶ 20.) Accordingly, Class Counsel maintains that this settlement is fair, adequate, and reasonable. (Young Dec., ¶ 15.)

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [...] Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the Parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, *supra*, 688 F.2d at p. 624 (citation omitted). Accordingly, the Settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v.*

*Cellular Alaska Partnership* (9th Cir. 1998) 151 F.3d 1234, 1242. Courts have routinely determined that class settlements, like the one reached here, are, reasonable even where Plaintiff recovers only a portion of their total potential recovery. (*See e.g., Behrens v. Wometco Enterprises, Inc.* (S.D. Fla. 1988) 118 F.R.D. 534, 542 "[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."]) Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even - a thousandth of a single percent of the potential recovery." (*Ibid.*; see also *City of Detroit v. Grinnell Corp.* (S.D.N.Y. 1972) 356 F.Supp. 1380, 1386; *Ma v. Covidien Holding, Inc.* (C.D. Cal., Jan. 31, 2014, No. SACV 12-02161-DOC) 2014 WL 360196, at *5 (finding a settlement worth 9.1% of the total value of the action "within the range of reasonableness"); *Balderas v. Massage Envy Franchising, LLC* (N.D. Cal., July 21, 2014, No. 12-CV-06327 NC) 2014 WL 3610945, at *5 (granting preliminary approval of a net settlement amount representing 5% of the projected maximum recovery at trial). In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See City of Detroit*, *supra*, 495 F.2d at p. 463.

Therefore, the two hundred forty-thousand-dollar ($240,000.00) Gross Settlement Amount is well within the range of reasonableness, and this factor cuts in favor of final approval.

### 4.    The Settlement Provides for Equal Treatment of Class Members

The settlement proposed by the Parties reflects no significant indication of preferential treatment. As described in the Proposed Notice:

> The Administrator will by divide the final Net Settlement Amount by the total number of Workweeks worked by all Class Members to yield the "Estimated Workweek Value," and multiply each Class Member's individual Workweeks by the Estimated Workweek Value

to yield his or her estimated Individual Settlement Share.

*See, e.g.*, *Altamirano v. Shaw Industries, Inc.* (N.D. Cal., July 24, 2015, No. 13-CV-00939-HSG) 2015 WL 4512372, at *8 (finding no preferential treatment because the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct"). As the settlement proposed by the Parties reflects no significant indication of preferential treatment, this factor cuts in favor of final approval.

### 5. The Absence of Any Class Member Objection to the Settlement Agreement Supports Final Approval

Plaintiff will file a supplemental declaration by Phoenix's representative following the administration of the Notice fourteen (14) days prior to the Final approval Hearing. To-date, Plaintiff is unaware of any objections. "[T]he absence of any objections to the Settlement Agreement among Class Members supports final approval." *In re Aftermarket Automotive Lighting Products Antitrust Litigation* (C.D. Cal., Jan. 10, 2014, No. 09 MDL 2007-GW(PJWX)) 2014 WL 12591624, at *3. Even in cases where objections are made, it is recognized that a small number of objections indicates a favorable class reaction. *See National Rural Telecommunications Cooperative*, *supra*, 221 F.R.D. at p. 526 (holding that "in the absence of a large number of objections to a proposed class action settlement, settlement actions are favorable to the class members."); *Atlas v. Accredited Home Lenders Holding Co.* (S.D. Cal., Nov. 4, 2009, No. 07-CV-00488-H (CAB)) 2009 WL 3698393, at *4 (recognizing that only two class members submitted objections to the plan of allocation in deciding to approve the plan of allocation); *see also Mandujano v. Basic Vegetable Products, Inc.* (9th Cir. 1976) 541 F.2d 832, 837.

### 6. Additional Rule 23(e) Factors

The judgment of experienced counsel regarding the settlement is entitled to

great weight. (*Hanlon*, *supra*, 150 F.3d at p. 1026; *Boyd v. Bechtel Corp.* (N.D. Cal. 1979) 485 F.Supp. 610, 622; *Ellis v. Naval Air Rework Facility* (N.D. Cal. 1980) 87 F.R.D. 15, 18.) Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." (*Rodriguez*, *supra*, 563 F.3d at p. 967 (*quoting In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373, 378).) Here, counsel for both Parties endorse the Settlement as fair, adequate, and reasonable. Plaintiff's Counsel and Defendant's counsel each have extensive experience in prosecuting and litigating class action wage and hour suits like this one.

Further, as discussed in the contemporaneously filed Motion for Class Representative Service Payment, Attorneys' Fees, and Reimbursement of Costs and Expenses, the proposed attorneys' fees of one-third or thirty-three and one-third percent (33.33%) of the Gross Settlement Amount to be reasonable in light of the risk involved in this litigation, the work performed by Class Counsel, and the fact that there were no objections to this amount. Moreover, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on a ruling regarding attorneys' fees. (Young Dec., Ex. A; *see also* Plaintiff's Fees Motion.) The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

## VI.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of the claims that meet the requirements of final approval pursuant to Rule 23, subdivision (e) of the Federal Rules of Civil Procedure. The Parties thereby request that the Court (1) grant final approval of the Settlement, and (2) grant final class certification and class action designation of the Settlement.

Dated: July 26, 2023                    **MAHONEY LAW GROUP, APC**

                                By:    <u>*/s/ Kevin Mahoney*</u>
                                       Kevin Mahoney, Esq.
                                       John A. Young, Esq.
                                       Attorneys for Plaintiff Kyana
                                       Rampley as an individual and on
                                       behalf of all similarly situated
                                       employees