JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KYANA RAMPLEY, individually on behalf of herself and all others similarly situated,<br><br>                              Plaintiff,<br><br>            v.<br><br>BEAR VALLEY COMMUNITY HEALTHCARE DISTRICT, and DOES 1 through 10, inclusive,<br><br>                              Defendants. | Case No. 2:21-cv-01270-SPG-SHKx<br><br>**ORDER GRANTING PLAINTIFF'S MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES AND COSTS [ECF NOS. 46, 47]** |

        Before the Court is Plaintiff Kyana Rampley's unopposed motions for final approval of class action settlement and for attorneys' fees and costs.  (ECF Nos. 46, 47).  Having considered the submissions of the parties, the relevant law, the record in this case, and the arguments of counsel during hearing on the Motions, the Court hereby **GRANTS** Plaintiff's Motions.

## I.    BACKGROUND

### A.    Plaintiff's Allegations

The Court previously set forth Plaintiff's allegations in its order granting preliminary approval of the class action settlement (the "Preliminary Approval Order"). (ECF No. 39 ("Prelim. Order") at 1–7). The proposed Settlement arises out of the following allegations contained in the First Amended Complaint ("FAC"):

From October 2017 through March 2021, Plaintiff was employed by Bear Valley Community Healthcare District ("Defendant") in a non-exempt hourly position as a phlebotomist at Bear Valley Community Hospital in Big Bear Lake, California. (ECF No. 31 ¶ 7 ("FAC")). Throughout Plaintiff's employment, Plaintiff was paid on an hourly basis and entitled to minimum wage, certain non-discretionary bonuses, overtime pay, and shift differentials. (*Id.* ¶ 16). However, during the relevant time period, Defendant permitted Plaintiff and the Plaintiff Class to work more than forty hours per work week. (*Id.* ¶ 18). Thus, Plaintiff and the Plaintiff class should have been compensated at one and one-half times pay, not simply at the regular rate of pay. (*Id.*). Because of Defendant's failure to accurately calculate the non-discretionary bonuses and other shift differential pay, Plaintiff and Plaintiff Class were underpaid in overtime compensation. (*Id.* ¶ 19). The FAC alleges violations of California's Fair Labor Standards Act ("FLSA") and the California Labor Code ("Labor Code").

### B.    Procedural History

Plaintiff commenced this case on July 29, 2021, and filed the operative first amended complaint on January 20, 2023. (FAC). The FAC asserts the following causes of action against Defendant and DOES 1 through 10: (1) Failure to Pay Overtime Wages, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and California Labor Code §§ 510 and 1194 ("Labor Code"), (*id.* ¶¶ 34–47); (2) Failure to Pay Minimum Wage, in Violation of the FLSA and Labor Code, (*id.* ¶¶ 48–51); and (3) Violation of the Private Attorneys General Act of 2004, California Labor Code § 2698, *et seq.*, (*id.* ¶¶ 52–61).

On March 10, 2023, Plaintiff filed an unopposed motion for preliminary approval of class action settlement. (ECF No. 35). On May 22, 2023, the Court granted Plaintiff's motion for preliminary approval. (Prelim. Order). Specifically, the Court granted Plaintiff's motion to: (1) conditionally certify the class as defined in the settlement agreement; (2) preliminarily approve the parties' Settlement; (3) appoint Phoenix Settlement Administrators as Settlement Administrator; (4) appoint Plaintiff's counsel, Kevin Mahoney and John Young of Mahoney Law Group, APC, as Class Counsel; and (5) appoint Plaintiff Kyana Rampley as class representative. *See* (*id.* at 25).

On July 26, 2023, Plaintiff submitted an unopposed motion for final approval of the class action settlement, (ECF No. 46 ("Mot.")), concurrently with a motion for attorneys' fees and costs, (ECF No. 47 ("Mot. Fees")).

### C.    The Settlement Agreement

The parties engaged in private mediation on December 2, 2022. (ECF No. 46-1 ("Young Decl.") ¶ 11). Thereafter, the parties engaged in further settlement negotiations, ultimately resulting in an agreement. (*Id.*). On December 29, 2022, Plaintiff filed with the California's Labor and Workforce Development Agency ("LWDA") a Notice of Labor Code Violations pursuant to Private Attorney General Act ("PAGA"), alleging violations of several Labor Code sections, including sections 201 to 204, 226(a), 558, 558.1, 1174(d), 1194, 1194.2, 1197.1, and 2699. (ECF No. 46-2 ("Settlement") at 6; ECF Nos. 35-1 ¶ 16; 35-3). Plaintiff then submitted the proposed Settlement to the LWDA on February 27, 2023. (ECF No. 35-1 ¶ 16; 35-4). Since being provided notice, the LWDA has not objected or otherwise contested the Settlement. (*Id.*).

The proposed settlement agreement (the "Settlement Agreement" or "Agreement") is attached to the Declaration of John Young ("Young Declaration") as Exhibit A. (Young Decl. ¶ 12; Settlement). The Settlement Agreement contains the following class definition, relief, attorney's fees, notice, and release provisions:

1.   <u>Class Definitions</u>

As discussed in the Preliminary Approval Order, the Settlement Agreement defines the Settlement Class as "all current and former non-exempt employees employed by Defendant within the State of California at any time during the Class Period." (Settlement at 2). Participating Class Members are Class members who do not timely request to be excluded from the Class Settlement. (Settlement at 5). Defendants agree to certification of the Class for purposes of settlement only. (Young Decl. ¶ 13). There are 419 Class Members. (ECF No. 49 ("Mitzner Supp. Decl.") ¶ 9).[1]

The Class Period is defined as "the period from July 29, 2018 to the earlier of (1) the date of preliminary approval of the Settlement or (2) the pay period ending date when Class Members collectively worked a number of Workweeks closest to 43,000 Workweeks." (Settlement at 2).

2.   <u>Monetary Terms</u>

Defendant has agreed to the following terms:

- <u>Gross Settlement Amount</u>: Defendant has agreed to pay a Gross Settlement Amount ("GSA") of $240,000.00, and to separately pay any and all employer payroll taxes owed on the Wage Portions[2] of the Individual Settlement Shares.[3] (Settlement at 3, 9). The parties agree that the GSA is non-reversionary, and 100% of the Net

---

[1] The Court understands this to be Participating Class members, given the following statement in the Young Declaration: "Class Members will automatically be paid their share if they did not opt out of the Settlement, no claim form is required." (Young Decl. ¶ 13).

[2] The Wage Portion refers to the "20%[] of each Participating Class Member's Individual Settlement Share [] allocated to settlement of wage claims," and the Wage Portions are "subject to tax withholding," as compared to the Non-Wage Portions that make up 80% of the Individual Settlement Share allocated "to settlement of claims for interest and penalties," and which "are not subject to wage withholdings." (Settlement at 9).

[3] The Individual Settlement Share is defined as "the *pro rata* share of the Net Settlement Amount that a Participating Class Member may be eligible to receive under the Settlement Agreement, to be calculated in accordance with Paragraph 3.2.4." (Settlement at 3). The Settlement then defines "Individual Settlement Payment" as the net payment of each Class Member's Individual Settlement Share. (*Id.*).

Settlement Amount[4] will be paid to Class Members without the need to submit a claim. (Settlement at 7). The GSA will be used to:

- o (i) pay Plaintiff Kyana Rampley $7,500.00 for the Class Representative Service Payment;

- o (ii) pay Class Members for their individual shares to be calculated after approval of the Settlement with 20% of a Participating Class Member's share allocated to settlement of wage claims (the "Wage Portion"), and 80% allocated to settlement of claims for interest and penalties (the "Non-Wage Portion");

- o (iii) pay the Settlement Administrator for the reasonable costs of administration of the Settlement, which the parties estimate will not exceed $10,000.00 absent the Court approving a higher amount after a showing of good cause;

- o (iv) pay Class Counsel 33.33% of the GSA, approximately $80,000.00 in fees;

- o (v) pay Class Counsel not more than $15,000 for Class Counsel's in costs, with any remaining amount to become part of the Net Settlement Amount;

- o (vi) pay a PAGA penalty totaling $10,000.00, allocated by 75% ($7,500.00) to the LWDA PAGA Payment, and 25% ($2,500.00) to the Individual PAGA Payments.

(Settlement at 10–11).[5]

---

[4] Per the terms of the Settlement Agreement, the Net Settlement Amount is the amount remaining after deductions are made from the Gross Settlement Amount "in the amounts approved by the Court: Individual PAGA Payments, the LWDA PAGA Payment, Class Representative Service Payment, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, and the Administration Expenses. The remainder is to be paid to Participating Class Members as Individual FLSA Settlement Payments." (Settlement at 4).

[5] This proposed distribution of PAGA penalties is consistent with the principle that "civil penalties recovered under PAGA are distributed 75 percent to the LWDA and 25 percent to the aggrieved employees." *Perez v. Performance Food Grp., Inc.*, Case No. LA CV17-

1   After these deductions, the Net Settlement Amount ("NSA") is estimated to be

2   $120,724.13. (ECF No. 46-8 ("Mitzner Decl.") ¶ 10). Thus, with approximately 419 Class

3   Members, the average amount each Class Member would receive upon approval of the

4   Settlement is approximately $288.12. (Mitzner Supp. Decl. ¶ 10).

5                  3.   Release of Claims

6        Under the Settlement Agreement, upon the Effective Date,[6] and full funding of the

7   GSA Plaintiff, all Participating Class Members, and all Aggrieved Employees will release

8   claims against Defendant and the related entities ("Released Parties"). (Settlement at 5,

9   11). Plaintiff agreed to a broader release of rights, including releasing and discharging all

10  Released Parties from all claims, including but not limited to: (a) all claims that were, or

11  reasonably could have been, alleged, based on the facts and legal assertions contained in

12  the FAC and (b) all PAGA claims that were, or reasonably could have been, alleged based

13  on facts and legal assertions contained in the FAC, Plaintiff's PAGA Notice, or ascertained

14  during the action. (*Id.* at 11–12). Plaintiff also have expressly waived and relinquished

15  the provisions, rights, and benefits, if any, of section 142 of the California Civil Code.

16  (*Id.*).

17       Additionally, all Participating Class Members who endorse/cash their settlement

18  check, will agree to release all released parties from all claims that were alleged, or

19  reasonably could have been alleged, that arose during the Class Period, based on the facts

20  and legal assertions stated in the FAC and ascertained in the course of the action, including

21

22  00357 JAK (SKx), 2021 WL 9763358, at *3 n.3 (C.D. Cal. Aug. 20, 2021) (citing *Thomas*

23  *v. Home Depot USA Inc.*, 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007)).

24  [6] The Settlement defines "Effective Date" to mean "the date by when both of the following
    have occurred: (a) the Court enters a Judgment on its Order Granting Final Approval of the

25  Settlement; and (b) the Judgment is final." (Settlement at 2). "The Judgment is final as of
    the latest of the following occurrences: (a) if no Participating Class Member objects to the

26  Settlement, the day the Court enters the Judgment; (b) if one or more Participating Class
    Members objects to the Settlement, the day after the deadline for filing a notice of appeal

27  from the Judgment; or if a timely appeal from the Judgment is filed, the day after the
    appellate court affirms the Judgment and issues a remittitur." (*Id.*).

28

any and all claims involving any alleged failure to pay minimum wages and overtime wages and for liquidated damages under the FLSA and 29 C.F.R. § 778.101, *et seq.* (*Id.* 12–13). In addition, all Participating Class Members, "on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns," agree to release all released parties from all claims that were alleged, "or reasonably could have been alleged," that arose during the Class Period, based on the facts and legal assertions stated in the FAC and ascertained in the course of the action. (*Id.*).

All Aggrieved Employees,[7] whether or not they are participating Class Members, will be deemed to release the Released Parties from all claims for PAGA civil penalties under the Labor Code that were alleged or reasonably could have been alleged, that arose during the PAGA Period, based on the facts and legal assertions stated in the FAC, the PAGA Notice, and ascertained in the course of the action. (*Id.* at 13).

Finally, Defendant agrees to fully release Plaintiff of "all claims or causes of action by reason of any injuries and/or damages or losses, known or unknown, foreseen or unforeseen, patent or latent, which Defendant has sustained or which may be sustained as a result of any facts and circumstances arising out of or in any way related to Plaintiff's employment with Defendant and the filing of the [a]ction." (*Id.* at 13).

### 4. Notice

In advance of the final fairness hearing, class notice was disseminated in accordance with notice procedures approved by this Court. (ECF Nos. 39, 46-8, 49). The class notice included the full amount of the fees and costs award requested here. No Class member has objected to Plaintiff's requested fee award. *See* (Mitzner Supp. Decl. ¶ 7).

---

[7] The Settlement Agreement defines Aggrieved Employee as "all current and former non-exempt employees employed by Defendant within the State of California at any time during the PAGA Period." (Settlement at 2). The PAGA Period is defined as "any pay period during which an Aggrieved Employee worked for Defendant for at least one day during the PAGA Period. PAGA Pay Periods are based on pay periods during which at least one day was worked." (*Id.* at 4).

## II.     LEGAL STANDARD

### A.     Final Approval of Class Certification

Parties seeking class certification for settlement purposes must satisfy the requirements of Federal Rule of Civil Procedure 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620–21 (1997). The threshold task when deciding whether to grant final approval of a class action settlement is to "ascertain whether the proposed settlement satisfies the requirements of Fed. R. Civ. P. 23(a), which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). In considering such a request, the court must give the Rule 23 certification factors "undiluted, even heightened, attention in the settlement context." *Amchem Prods*, 521 U.S. at 620.

### B.     Final Approval of Class Settlement

Once a class is certified, Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Courts reviewing class action settlements must ensure that unnamed class members are protected from unjust or unfair settlements affecting their rights, while also accounting for the strong judicial policy that favors settlements[.]" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (internal quotation and alteration marks omitted). A district court must examine the settlement for "overall fairness[.]" *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 569 (9th Cir. 2019) (en banc). Accordingly, before approving a class action settlement under Rule 23, a district court must conclude that the settlement is "fundamentally fair, adequate, and reasonable." *Id.*; *Hanlon*, 150 F.3d at 1026. In the Ninth Circuit, there is a "strong judicial policy that favors settlements[.]" *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (quoting *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.2008)).

## III.   FINAL SETTLEMENT APPROVAL

The parties seek certification of the settlement class pursuant to Rule 23. For the reasons stated below, the Court finds that all of Rule 23's requirements have been satisfied.

### A.    Final Settlement Class Certification: Rule 23(a) and (b)

In its Preliminary Approval Order, the Court certified a provisional settlement class. (Prelim. Order).   The Court "need not find anew that the settlement class meets the certification requirements of Rule 23(a) and (b)." *Adoma v. Univ. of Phoenix, Inc*., 913 F. Supp. 2d 964, 974 (E.D. Cal. 2012); *see also Smith v. Keurig Green Mountain, Inc*., No. 18-CV-06690-HSG, 2023 WL 2250264, at *4 (N.D. Cal. Feb. 27, 2023) ("Because no facts that would affect these requirements have changed since the Court preliminarily approved the class . . ., this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval."). Here, the Settlement Class has not changed since it was conditionally certified.   All the criteria for class certification remain satisfied.   Therefore, the Court confirms its Preliminary Approval Order certifying the Settlement Class.

### B.    Final Settlement Award: Rule 23(e)

Once it has been established that the proposed settlement would bind class members, "the court may approve it only after a hearing and finding that it is fair, reasonable, and adequate" after considering the following factors:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021) ("In 2018, Congress amended Rule 23(e)(2) to provide specific factors for a district court to consider in determining whether a settlement is 'fair, reasonable, and adequate.'" (quoting Fed. R. Civ. P. 23(e)(2)).  The Court must apply a "higher level of

scrutiny for evidence of collusion or other conflicts of interest," irrespective of whether the settlement agreement was negotiated before or after class certification. *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see Briseno v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021) (holding that "courts must apply *Bluetooth's* heightened scrutiny to post-class certification settlements in assessing whether the division of funds between the class members and their counsel is fair and "adequate").

### 1.    Adequacy of Representation by Class Representatives and Class Counsel

The first factor requires that the class representatives and class counsel have adequately represented the class. Fed. R. Civ. P. 23(e)(2)(A). Class representatives are adequate if the named plaintiff and counsel do not have any conflicts of interest with other class members and will prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020. Adequate representation of counsel is generally presumed in the absence of contrary evidence. *See Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008).

In the Preliminary Approval Order, this Court concluded that Plaintiff satisfied the adequacy requirement under Rule 23(a)(4) and appointed Plaintiff's attorneys, Kevin Mahoney and John Young, as Class Counsel and Plaintiff as representative of the Class. (Prelim. Order at 12–13); *see Hilsley v. Ocean Spray Cranberries, Inc.*, No. 3:17-CV-2335-GPC-MDD, 2020 WL 520616, at *5 (S.D. Cal. Jan. 31, 2020) ("Because the Court found that adequacy under Rule 23(a)(4) has been satisfied above, due to the similarity, the adequacy factor under Rule 23(e)(2)(A) is also met."). Given Plaintiff and Class Counsel's extensive work and familiarity with this case, (Prelim. Order at 12–13), Plaintiff and Class Counsel possess sufficient information to make an appropriate and informed evaluation of the proposed Settlement. *See* (Young Decl. ¶¶ 7–8, 15–16, 22, 28). Additionally, Class Counsel has years of experience litigating class actions in the employment context, including many wage and hour actions. *See* (Prelim. Order at 13). Accordingly, the

Settlement Class is adequately represented, and this factor weighs in favor of approval of the proposed settlement.

### 2.    Arm's-Length Negotiation

The second factor requires that the proposed settlement have been negotiated at "arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  As this Court previously observed, the Settlement Agreement is the result of an extensive and informed arm's-length negotiations with an experienced class action mediator, that appears to have occurred over several months.  (Preliminary Approval Order at 16 (citing ECF No. 35-1 ¶¶ 4–5); Young Decl. ¶¶5–7, 11); *see Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no evidence to suggest that the settlement was negotiated in haste or in the absence of information illuminating the value of plaintiffs' claims"); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").  The Parties also participated in a mediation with Mr. Steve Serratore, a neutral mediator who is "highly [] experienced" in wage and hour allegations, and subsequently continued negotiations that ultimately helped facilitate the settlement agreement before the Court.  *See* (Young Decl. ¶ 11); Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes ("the involvement of a neutral or court-affiliated mediator or facilitator . . . may bear on whether [negotiations] were conducted in a manner that would protect and further the class interests").  This factor thus weighs in favor of approval of the proposed settlement.

### 3.    Adequacy of the Relief

The third factor requires the court to consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  The Court addresses each in turn.

#### a)    *Costs, Risks, and Delay of Trial and Appeal*

"Often, courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. When considering "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026; *see also Musgrove v. Jackson Nurse Pros., LLC*, No. CV 17-6565 FMO (SSX), 2022 WL 18231364, at *5 (C.D. Cal. June 24, 2022). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Reed v. Bridge Diagnostics, LLC*, Case No. 8:21:cv-01409-CJC-KES, 2023 WL 4833461, at *6 (C.D. Cal. July 27, 2023).

Here, continued litigation would likely be costly and result in a substantial delay of whatever potential relief might be obtained in the absence of a settlement. For example, should this litigation continue, Plaintiff would move for class certification for trial, which Defendant would have opposed and/or appealed. *See* (Mot. at 23). Further, because both parties maintain the strength of each of their claims and defenses, continued litigation would likely "require additional costly and complicated discovery, summary judgment [motions], and in all likelihood, trial," for which preparation, including assessment of damages, would be replete with disputes. (*Id.* at 22–23). In reaching a settlement, Plaintiffs have ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 964 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors also weigh in favor of approving the settlement. *See Musgrove*, 2022 WL 18231364, at *5 (finding as a basis for approving the settlement that "it is significant that class members will receive immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation" (internal citation omitted)).

   *b)* *Effectiveness of Proposed Method of Relief Distribution*

Rule 23(e) directs the court to consider the "effectiveness of any proposed method of distributing relief to the class[.]" Fed. R. Civ. P. 23(e)(2)(C)(ii). "[T]he goal of any

distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." *Musgrove*, 2022 WL 18231364, at *6 (quoting 4 Newberg on Class Actions, § 13:53 (5th ed.)). Further, "[o]ften it will be important for the court to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes.

Here, each Participating Class Member will be entitled to their share of the net settlement amount without having to submit a claim form. (Young Decl. ¶ 13). Claims will be based on the "data file" Defendant's Counsel provided to the Administrator on July 14, 2023, that contained "names, last known mailing addresses, Social Security numbers, dates of employment, and Workweeks for each Class Member ("Class List") during the Class Period." (Mitzner Decl. ¶¶ 2–3). The Administrator then "calculat[ed] the number of weeks each Class Member worked during the period from July 29, 2018 to May 22, 2023 ("Class Period") and the number of workweeks that each Aggrieved Employee worked during the time period from July 29, 2020 to May 22, 2023 ("PAGA Period")[,]" which became the basis for each Individual Settlement Share. (*Id.*).

Because the proposed method of distributing relief to Class Members is based on each Member's personal records and requires no actions from Participating Class Members to receive their share, the method effectively distributes relief to Class Members. This subfactor weighs in favor of final approval.

### c)    *Proposed Award of Attorneys' Fees*

The Court must consider the "terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, Defendant has agreed to pay Class Counsel a total of $80,000.00, which is one third of the GSF. In its Preliminary Approval Order, the Court expressed concern for the $80,000.00, or 33.33% of the GSA, fees award because it exceeds the 25% benchmark recognized by the Ninth Circuit. (Prelim. Order at 18).

In the context of a class settlement, "courts have an independent obligation to ensure that" any award of fees and costs "is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941.  In *Briseño*, the Ninth Circuit stressed that, before approving class action settlements, district courts must "scrutiniz[e] the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause. *See Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).

The Settlement provides that Class Counsel will recover not more than one third of the GSF.  (Settlement at 7).  "The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement value, with 25% considered the benchmark." *Razo v. AT&T Mobility Servs., LLC*, No. 1:20-CV-0172 JLT HBK, 2022 WL 4586229, at *10 (E.D. Cal. Sept. 29, 2022) (citing *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).  While the Court reduces the fees, as discussed *infra*, the requested fees fall within the "typical range of acceptable attorneys' fees," and thus there is no evidence of disproportionate distribution for purposes of this factor.  *Razo*, 2022 WL 4586229, at *10; *see Briseño*, 998 F.3d at 1022–23.  As such, this factor weighs in favor of approving the Settlement Agreement.

Next, a settlement agreement contains a "clear-sailing arrangement" when "the defendant agrees not to challenge a request for an agreed-upon attorney's fee," but the "mere presence of such an agreement is not 'an independent basis for withholding settlement approval.'" *Martinez v. Helzberg's Diamond Shops*, Case No. ED CV 20-1085 PSG (SHKx), 2021 WL 9181893, at *7 (C.D. Cal. Sept. 24, 2021) (quoting *Briseño*, 998 F.3d at 1027).  Here, the Settlement contains a "clear-sailing agreement" because Defendants agreed to pay the Class Counsel Fees Payment.  (Settlement at 7).  Thus, this weighs slightly toward inappropriate collusion, but is not dispositive in light of other factors.  *See Briseño*, 998 F.3d at 1022–23, 1027–28.

The third factor requires courts to look for "when the agreement contains a 'kicker' or 'reverter' clause that returns unawarded fees to the defendant, rather than the class" which weighs toward a finding of class counsel self-interest. *Briseño*, 998 F.3d at 1023. Here, the Settlement is non-reversionary, meaning that "[n]one of the Gross Settlement Amount will revert to Defendant." (Settlement at 7). This factor weighs toward approving the Class Settlement.

Based on the above factors, the Court finds that the proposed settlement appears to be the product of serious, informed, non-collusive negotiations. *See Martinez*, 2021 WL 9181893, at *7 (finding a settlement agreement satisfied the *Briseño* factors when only the "clear sailing" factor weighed against final approval).

### d)     Settlement Agreement with Lead Plaintiff

The Court must also evaluate any agreement made in connection with the proposed Settlement Agreement. See Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). The Settlement Agreement provides a $7,500.00 Service Payment to Plaintiff Rampley in exchange for a general release of her individual claims. *See* (Settlement at 7, 11). The Court previously preliminarily held that the Service Payment to Plaintiff Rampley fell within the range of possible approval. However, the Court noted that final approval would depend on adequate support for the requested award, especially in light of the approach of many district courts in this Circuit to rely upon a "$5,000 benchmark." (Prelim. Order at 21).

"Courts have discretion to issue incentive awards to class representatives." *Ochinero v. Ladera Lending, Inc.*, Case No. SACV 19-1136 JVS (ADSx), 2021 WL 4460334, at *9 (C.D. Cal. July 19, 2021) (*quoting Rodriguez*, 563 F.3d at 958–59). Incentive or service awards intend to compensate class representatives for "work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. District courts evaluate these awards relative to the plaintiff's efforts, considering the financial or reputation risk involved, any personal difficulties encountered by the plaintiff, the amount of time spent, the duration of the

litigation, and any personal benefit (or lack thereof) enjoyed by the plaintiff. *See Bravo v. Gale Triangle, Inc.*, CV 16-03347 BRO (GJSx), 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017); *Ochinero*, 2021 WL 4460334, at *9. Though the Ninth Circuit has not set a benchmark, many district courts in this Circuit treat $5,000 incentive awards to be reasonable. *See Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016); *see also Odrick v. UnionBancal Corp.*, No. C 10-5565 SBA, 2012 WL 6019495, at *6–7 (N.D. Cal. Dec. 3, 2012) (granting an award of $5,000 to plaintiff prosecuting a wage and hour class action). District courts also consider the "proportionality between the incentive payment and the range of class members' settlement awards." *Smith*, 2016 WL 362395, at *10.

Here, Plaintiff Rampley estimates she has spent at least fifty hours throughout the litigation of this case. (ECF No. 35-6 ("Rampley Decl.") ¶ 10). She assisted Class Counsel in the rounds of discovery, appearing for deposition and spending "hours searching for, producing, and reviewing documents in [her] possession[.]" (*Id*.). Additionally, she alleges she took on a significant professional risk by being the named Plaintiff because it could jeopardize her future employment, given that any future employer could "easily learned [she] had sued [her] former employer." (*Id.* ¶ 7). Plaintiff also agreed to a broader release of her claims than the other Class Members. *See* (Young Decl. ¶ 13, Settlement at 11). Even though the case settled before significant motion practice had occurred, during the fairness hearing Class Counsel represented that mediation did not start until after Plaintiff completed her deposition. Class Counsel also represented that Plaintiff was actively involved in the mediation.

The Court has considered the time and effort Plaintiff has spent on this case, the scope of her release, and the risks she took by serving as the named Plaintiff, among other facts. The Court believes a Service Award of $5,000 is appropriate to compensate Plaintiff for her efforts. There is no evidence supporting the wide differential between the Individual Share awards, the average of which is calculated to be approximately $288.12, (Mitzner Supp. Decl. ¶ 10), compared to a $7,500 incentive award. *See Smith*, 2016 WL

362395, at *10 (declining to award class representatives $7,500 when average class participant would receive "$1,608.16").  Though the Court recognizes that Plaintiff, like many labor and wage class representatives, took on a reputational risk, the Court does not find that the risk was any different than other wage and hour cases.  *See Bravo*, 2017 WL 708766, at *19 (approving a $5,000 award); *Smith*, 2016 WL 362395, at *10–11 (declining to award $7,500 in a wage and hour class action, even though class representatives claimed they subjected themselves to a "negative reputation").  Further, the approximately fifty hours Plaintiff Rampley spent in this case justifies a service award, but only in the amount of $5,000.  *See e.g.*, *Burden v. SelectQuote Insurance Services*, No. C 10–5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013) (awarding class representative $5,000 even when they appeared for two depositions and spent 80 hours on the case); *Smith*, 2016 WL 362395, at *10 (declining to award class representatives $7,500 when class representatives only put in a "modest" 20–25 hours of work into the case).  The Court thus reduces the incentive award to $5,000.

### 4.    Equitable Treatment Among Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes.

As the Preliminary Approval Order discussed, this Settlement treats Class Members equitably.  (Prelim. Order at 17–18).  Members of the Settlement Class will receive relief, through their Individual Shares, proportional to the number of weeks worked for Defendant during the Class Period.  The Settlement provides the following calculation, described by the Notice sent to Class Members:

> The Administrator will by [sic] divide the final Net Settlement Amount by the total number of Workweeks worked by all Class Members to yield the "Estimated

Workweek Value," and multiply each Class Member's individual Workweeks by the Estimated Workweek Value to yield his or her estimated Individual Settlement Share.

(Settlement at 36–37).  Because the calculation for each Individual Share is based on proportionate work for Defendant and relative to the entire Class, the Class Members are treated equitably.  *Ochinero*, 2021 WL 4460334, at *7 (finding class members were treated equitably when each settlement class member received "relief proportional to the number of weeks that he or she worked for [Defendant] during the Class Period, as compared with the overall number of eligible weeks worked by members of the Settlement Class").  The Court finds that this factor weighs in favor of approval.  *See* Fed. R. Civ. P. 23(e)(2)(D).

### 5.   Sufficiency of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all Settlement Class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  Although Rule 23 requires that reasonable efforts be made to reach all Settlement Class members, it does not require that each Settlement Class member actually receive notice.  *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The notice plan previously approved by this Court was implemented and complies with Rule 23(c)(2)(B).  *See* (Prelim. Order at 23–25, Mitzner Decl. ¶¶ 3–9, Mitzner Supp. Decl. ¶¶ 2–9).  In accordance with the parties' proposed notice program described in Plaintiff's Motion for Preliminary Approval (ECF No. 35 at 32–33) and Section 7.4 of the Settlement Agreement, a copy of the Notice was mailed via first-class United States Postal Service ("USPS").  (Settlement at 15–16).  No objections have been submitted.  (Mitzner Supp. Decl. ¶ 7).  The "absence of a negative reaction" weighs in favor of approval.  *Chun-Hoon v. McKee Foods Corp*., 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010).  Based on the above, the notice provided to the class members appears adequate.

**IV.    ATTORNEYS' FEES AND COSTS**

    **A.    Attorneys' Fees**

    Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs.  Attorney's fees and costs "may be awarded in a certified class action where so authorized by law or the parties' agreement." *In re Bluetooth*, 654 F.3d at 941.  Where litigation leads to the creation of a common fund, and parties seek attorneys' fees using the percentage-of-recovery method, "courts typically use 25% of the fund as a benchmark for a reasonable fee award." *Martinez*, 2021 WL 9181893, at *7 (citing *In re Bluetooth Headset*, 654 F.3d at 942).  Courts may adjust the percentage of the common fund as appropriate under the circumstances. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–48 (9th Cir. 2002).  If a requested award is an upward departure from the 25% benchmark, even if the defendant agrees to pay it, courts apply the following factors (the "*Vizcaino* factors"): "(1) the results achieved; (2) the risk of litigation; (3) the skill required and quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Tarlecki v. bebe Stores, Inc.,* No. C 05–1777 MHP, 2009 WL 3720872, at *4 (N.D. Cal. Nov. 3, 2009) (citing *Vizcaino*, 290 F.3d at 1048–50); *see also Hernandez v. Burrtec Waste & Recycling Servs., LLC*, No. 5:21-CV-01490-JWH-SP, 2023 WL 5725581, at *6–7 (C.D. Cal. Aug. 21, 2023) (applying the *Vizcaino* factors and approving an upward adjustment from the Ninth Circuit benchmark).  Courts are encouraged to use a second method as a cross-check after choosing a primary method. *See Martinez*, 2021 WL 9181893, at *7 (citing *In re Bluetooth Headset*, 654 F.3d at 944–45).

    Here, the Settlement Agreement provides for a fee award amounting up to 33.33% of the common fund. *See* (Settlement at 7).  Because the award departs from the 25% benchmark, the Court considers each of the *Vizcaino* factors and will "cross-check" the reasonableness using the lodestar method.

### 1.    The Results Achieved

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). Class Counsel has not stated a definitive number of likely maximum recovery. *See Bravo*, 2017 WL 708766, at *14 ("Plaintiffs' counsel's estimated $2.75 million maximum recovery that Plaintiffs could have recovered had the case proceeded."). However, the Settlement here amounts to a $240,000.00 non-reversionary GSA. (Settlement at 7). The average payment to each Participating Class Member is estimated to be $288.12. (Mitzner Supp. Decl. ¶ 10). Counsel characterizes this as a "substantial result" and "[h]ighly [b]enficial for Class Members." *See* (Mot. Fees. at 15). So far, no objections to the Settlement have been received. *See* (Mitzner Supp. Decl. ¶ 7). Based on the risks involved in continuing litigation and a "seemingly positive reaction from the Class Members," the Court finds that a positive result was achieved here. *See Bravo*, 2017 WL 708766, at *14.

However, the record does not demonstrate "exceptional" circumstances that might justify an upward departure. In *Bravo*, the district court denied a 30% fee award when the class members were estimated to received "on average, $389.81, with a maximum award of $1,089.71). *Id.* (citing *Adoma*, 913 F. Supp. 2d at 982–83 (holding that recovery of $2,000 per class member in wage and hour class action was "not so exceptional" to justify an increase from the 25% benchmark); *cf. Martinez*, 2021 WL 9181893, at *8 (finding exceptional circumstances when each class member received, on average, $9,206.99). Thus, while the Court finds that the favorable results favor an award of fees, the present record and results achieved do not counsel toward an upward departure from the Ninth Circuit benchmark.

### 2.    Risk of Litigation

The risk that further litigation might result in no recovery is a "significant factor" in assessing the fairness and reasonableness of an award of attorneys' fees. *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47; *see also Vizcaino*, 290 F.3d at 1048.

As discussed above, the Court finds that there would be a risk for Plaintiff to continue litigating this case, especially considering that substantial motion practice and trial could result, leaving Plaintiff and the Class Members without a certain favorable result. (Mot. Fees. at 16–17). Defendant also continues to deny liability. *See* (*id.*). Further, Class Counsel worked on a contingency basis with no guarantee of recovery. *See* (Young Decl. ¶ 10); *Bravo*, 2017 WL 708766, at *15 ("[B]ecause Plaintiffs' counsel took this case on a contingency basis, they took a significant risk in advancing funds and spending time without any guarantee of recovery."). This factor weighs in favor of awarding the requested 33.33% fee.

### 3.   Skill Required and Quality of Work

"The Court may also consider the skill required to prosecute and manage this litigation, as well as Plaintiffs' counsel's overall performance." *Id*. In addition to the complexity of the claims at issue, courts also consider the progression of the case when considering this factor. *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 457 (E.D. Cal. 2013) (weighing this factor against an upward departure from the 25% benchmark when the case was a "garden-variety wage and hour class action"); *Navarro v. Servisair*, No. C 08-02716 MHP, 2010 WL 1729538, at *3 (N.D. Cal. Apr. 27, 2010) (noting that "the rapidity of the settlement and the lack of extensive motion practice" weighed toward a downward departure from the benchmark).

Here, Class Counsel is experienced in wage and hour class actions and, as discussed above, obtained a favorable result. *See* (Young Decl. ¶ 28). However, the issues do not appear particularly complex, which is belied by the parties engaging in no motion practice before beginning to discuss settlement. *See Navarro*, 2010 WL 1729538, at *3 (declining a 30% fees award when the parties "reached this settlement relatively quickly without litigating any motions for summary judgment or class certification"). Accordingly, this factor weighs against the requested 33.33% fee.

### 4. Contingent Nature and Financial Burden

Courts consider whether the contingent nature of the representation may justify a higher percentage fee award based on the risk that counsel may not recover any award, as well as the financial burden accompanying the contingent nature of the representation. *See In re Omnivision Techs*., 559 F. Supp. 2d at 1047; *see also Vizcaino*, 290 F.3d at 1048–50.

Here, Class Counsel has incurred "at least [$11,755.87]" in litigation costs and expenses. (Mot. Fees at 24; Young Decl. ¶ 31). Class Counsel also spent "over 124.90 hours working on this matter." (Young Decl. ¶ 29). The Court recognizes the burden the contingent nature of the representation puts on Class Counsel, but that burden does not appear out of the ordinary for contingency cases, a fee structure of which Class Counsel "typically" employs. (*Id.*). Further, settlement was reached early in this case before the parties engaged in substantial motion practice. Thus, the circumstances justify the 25% benchmark percentage of the common fund and do not weigh in favor of the requested 33.33%. *See Bravo*, 2017 WL 708766, at *15–16 (weighing this factor against an "upward adjustment" when "the parties reached settlement early in the proceedings" and plaintiff's counsel "was not required to forward a substantial amount of costs" when it advanced $17,293.46 in fees and costs).

### 5. Awards Made in Similar Cases

Courts also consider similar awards in other cases to determine whether the award requested is "commensurate with percentage-of-the-benefit awards made in other wage-an-hour actions in th[e] district[.]" *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449–50 (E.D. Cal. 2013); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047–48 ("[N]early all common fund awards [that] range around 30% . . . achieve this result after lengthy motion practice, volumes of discovery, and hence, the accumulation of extensive attorney time on behalf of all parties." (citations omitted)).

Plaintiff cites several cases, but the cases do not support a fee award above the benchmark for two reasons. First, the circumstances in the case Plaintiff cites differ from the present circumstances, including the complexity of the issues handled by class counsel

and higher individual amounts awarded to class members.  Plaintiff's counsel has not

shown that this case involved novel (or complex) legal or factual issues, significant motion

practice, substantial attorney time, or that this settlement is exceptional.  *Cf.  Elliott v.*

*Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL 2761316, at *6–7, 10

(C.D. Cal. June 12, 2014) (awarding a 30% fee award to compensate counsel for taking on

difficult legal issues, including "novel legal issues" that were "compounded" by complex

factual circumstances); *Barbosa*, 297 F.R.D. at 449–50 (awarding 30% fees award when

the wage and hour case was actively litigated, "required specialist skills to litigate the legal

theories relating to wage and hour law and labor law at issue in the case," and required

working with many non-English speaking class members); *Bower v. Cycle Gear, Inc*, No.

14-CV-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (awarding 30%

when counsel had litigated the case for more than 700 hours and "[t]he average recovery

for California Class Members is approximately $1,250.12"); *Hester v. Vision Airlines, Inc.*,

No. 2:09-CV-00117-RLH, 2014 WL 3547643, at *11 (D. Nev. July 17, 2014) (awarding

fees amounting to 30% of settlement because counsel obtained an "exceptionally favorable

result" given the complexity of the case, length of the litigation, and that the settlement

amounted to "94% of total recovery, [which was] exceptional in view of [Defendant's]

threatened bankruptcy"); *Stuart v. Radioshack Corp.*, No. C-07-4499 EMC, 2010 WL

3155645, at *1, 6 (N.D. Cal. Aug. 9, 2010) (awarding 30% fees of a settlement reached

nine days before trial after "vigorous" litigation, including class certification and trial

briefing) "); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010)

(awarding 30% fees when counsel "litigate[d] cutting-edge legal theories surrounding rest

and meal periods, and navigate[d] challenging issues of proof in light of the limited

recording keeping by Defendant" and average award was approximately $2,600); *Singer*

*v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D.

Cal. June 1, 2010) (awarding 30% when "the complexity and duration of the case, coupled

with the intensity of settlement negotiations" favored an upward departure); *In re Heritage*

*Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7, 21 (C.D. Cal. June 10, 2005)

(awarding 30% fees award for a national class action with forty defendants, issues of first impression, and other exceptional circumstances). Second, Plaintiff also cites cases not related to wage and hour class actions without explaining why such cases demonstrate that the requested fee percentage is "commensurate" with awards made in "other wage-and-hour actions." *Barbosa*, 297 F.R.D. at 449–50 (E.D. Cal. 2013). *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (settlement regarding a derivative and securities class action); *Estrella v. Freedom Fin. Network, LLC*, No. CV 09-03156 SI, 2012 WL 4645012, at *3 (N.D. Cal. Oct. 1, 2012) (settlement regarding a consumer class action, which was also reached after class certification motions and summary judgment motions were filed); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, No. CV 07-3072 AHM (FMMx), 2009 WL 9100391, at *1 (C.D. Cal. June 24, 2009) (settlement regarding a highly litigated civil rights class action in which the "factual issues were complex, and management of the process required a high level of skill and effort"). Thus, Plaintiff's authority does not demonstrate that "similar" cases justify the upward departure from the Ninth Circuit benchmark.

The Court finds *Bravo* instructive. In *Bravo*, similar to the cases the *Bravo* court used to support its benchmark 25% fees award, the settlement was reached before motions for class certification, and the individual awards amounted to approximately $389.81, with a maximum recovery of $1,089.71. *See Bravo*, 2017 WL 708766 at *14–16. Here, the parties engaged in no motion practice prior to settlement, and both the average and maximum recovery are less than in *Bravo*. Thus, *Bravo* and the cases that court relied upon are persuasive, and this factor weighs against a 33.33% award. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257, 261 (N.D. Cal. 2015) (awarding the 25% benchmark even after counsel litigated several motions to dismiss, engaging in significant discovery, and negotiating a seven-figure settlement for the class, but all of which was prior to the litigation of class certification or summary judgment); *Ontiveros v. Zamora,* 303 F.R.D. 356, 374–75 (E.D. Cal. 2014) (awarding the 25% benchmark even when "novel legal theories" that could "impact state labor law" were involved).

### 6. Class Reaction

"The presence or absence of objections from the class is also a factor in determining the proper fee award." *In re Heritage Bond Litig.*, 2005 WL 1594389, at *15. As discussed, class notice of the proposed settlement was timely disseminated in accordance with the notice procedures approved by the Court, and there have been no objections to the Settlement Agreement, including the requested 33.33% fees award. (Mitzner Supp. Decl. ¶ 7). This factor therefore weighs in favor of awarding the requested 33.33% fees award.

### 7. Balancing the Factors

The Court finds that, on balance, the *Vizcaino* factors weigh against awarding the 33.33% fees award here. While Class Counsel achieved a favorable result and appeared to perform well, the skill required and work performed were not demonstrably different than other garden-variety wage and hour actions. Though district courts have awarded upward adjustments from the 25% benchmark in more complex wage and hour class actions where individual class member awards were higher or the parties heavily litigated the underlying issues, the Court is not persuaded that the record or terms of the settlement here supports doing so, especially in light of the quick settlement, minimal motion practice, and routine legal issues.

### 8. Lodestar Cross-Check

The Court considers the $68,621.00 lodestar figure, the claimed 124.90 hours worked, and the 1.17 multiplier in performing its reasonableness check using the lodestar method. *See* (Mot. Fees at 21–23). To calculate the lodestar, the court must multiply the number of hours the attorneys reasonably spent on the litigation by the reasonable hourly rate in the community for similar work. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Attorneys' fee awards should include compensation for "all hours reasonably expended prosecuting the matter," excluding "hours that are excessive, redundant, or otherwise unnecessary[.]" *Martinez*, 2021 WL 9181893, at *10. "The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting." *Thieriot v.*

*Celtic Ins. Co.*, No. C-10-04462-LB, 2011 WL 1522385, at *6 (N.D. Cal. Apr. 21, 2011) (citation omitted); *see also Hernandez*, 2023 WL 5725581, at *7 (C.D. Cal. Aug. 21, 2023); *Bravo*, 2017 WL 708766, at *18 (finding an hourly rate reasonable even when "counsel does not provide adequate support for [counsel's] proposed hourly rate" because for the purposes of a "lodestar 'cross-check' [it] need not be as exhaustive as a pure lodestar calculation" (cleaned up) (citing *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *14 (CD. Cal. July 21, 2008)).

Here, the submitted hourly rate and hours worked are reasonable. Class Counsel's submitted hourly rates that range between $500 and $700, depending on the attorney's experience. (Young Decl. ¶ 28 (noting that Kevin Mahoney's hourly rate is $750, and the hourly rate for other attorneys with less than 10 years of experience is approximately $550). In support of this rate, counsel only submits his own statements in his declaration stating that these rates "have been approved in similar type lawsuits in state court[.]" (*Id.*). The submitted exhibit detailing the billing statement reflects that "KM" (Kevin Mahoney) bills at $750 per hour, "JAY" (John Young) bills at $550 per hour, with other undefined individuals billing between $180 through 400 per hour. (ECF No. 46-4). Further, the lodestar figure divided by the number of hours worked results in an approximately $550 average hourly rate. The Court finds that each of these rates is within the accepted range of attorney's rates in the relevant community. *Martinez*, 2021 WL 9181893, at *10 ("The Real Rate Report provides that, in Los Angeles, partners litigating employment and labor matters have hourly rates ranging from $470 to $753, and associates have hourly rates ranging from $335 to $570"); *Bravo*, 2017 WL 708766, at *17 (discussing hourly rates for associates at $350 and partners at $650); *Bellinghausen*, 306 F.R.D. at 262 ("A judge in Los Angeles Superior Court recently awarded [counsel] fees at an hourly rate of $650[.]").

Based on its review of the hours worked, the Court also finds the hours worked to be reasonable, not duplicative or excessive, with no evidence of block-billing. *See* (ECF No. 46-4). For example, Class Counsel billed only 124.90 hours, which appears to appropriately reflect the limited discovery, settlement discussions, and preparation of the

approval for class action settlement. *Bravo*, 2017 WL 708766, at *18 (finding 243.5 hours reasonable for a similar posture case). Thus, the lodestar amount of $68,621.00 is reasonable for the purposes of a lodestar cross-check.

Lastly, the multiplier appears to be within the range approved by the Ninth Circuit, as multipliers ranging from 1.0-4.0 are frequently rewarded in common fund cases. *See Vizcaino*, 290 F.3d at 1051 n. 6. However, for the reasons discussed above, the Court finds that the upward adjustment to 33.33% is still not warranted based on the circumstances, even if the requested award is technically within the reasonableness cross-check. *See Bravo*, 2017 WL 708766, at *18 (declining to award counsel's request of "thirty-percent of the common fund" even though "lodestar cross-check indicate[d]" that the request was "not unreasonable"). Thus, the Court GRANTS Class Counsel's request for attorneys' fees, but amends the amount to the 25% benchmark for a total award of $60,000.

## B.   Costs and Expenses

In class action settlements, "[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1048. "There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *In re Heritage Bond Litig*., 2005 WL 1594403, at *23 (citation omitted). Courts throughout the Ninth Circuit regularly award costs in wage and hour class actions. *See, e.g.*, *Bellinghausen*, 306 F.R.D. at 265 (collecting cases).

Class Counsel has submitted an itemized list of costs amounting to $11,775.87. These costs include research costs, postage, cost for the mediator and court reporters, and copying expenses. (ECF No. 46-5). These costs appear reasonable and typical of other similar actions. *See, e.g.*, *Ontiveros*, 303 F.R.D. at 375 (approving costs, including mediator, court fees, depositions in a wage and hour class action); *Bravo*, 2017 WL 708766, at *19 (approving online research, among other things); *Barbosa*, 297 F.R.D. at

454 (noting that frequently reimbursed costs include items like mail charges and mediation fees).  Thus, the Court GRANTS Class Counsel's request for costs.

## V.      CONCLUSION

For the foregoing reasons, the Court:

1. **GRANTS** Plaintiff's Unopposed Motion for Final Approval and approve settlement of the action between Plaintiff and Defendant, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate and directs the Parties to perform their settlement in accordance with the terms set forth in the Settlement Agreement;

2. **GRANTS** an award to Class Counsel for $60,000 in attorneys' fees and $ 11,775.87 in costs to be paid to Class Counsel;

3. **GRANTS** an award to Plaintiff Kyana Rampley for $5,000 in exchange for a general release of her individual claims and finds that this amount is warranted and reasonable; and

4. **DISMISSES** Plaintiff's case with prejudice, in accordance with the terms of the Settlement Agreement.

**IT IS SO ORDERED.**

DATED:  October 19, 2023

HON. SHERILYN PEACE GARNETT
UNITED STATES DISTRICT JUDGE